1

2

3

4
FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 23, 2024

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GEORGE CAMERON AND JANIN CAMERON, Country Mutual Insurance Company claimants, and all others similarly situated throughout Washington State and the United States of America, | No. 1:24-CV-03075-MKD |
| | ORDER DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION |
| Plaintiffs, | |
| v. | |
| COUNTRY MUTUAL INSURANCE COMPANY, an insurance company; COUNTRY FINANCIAL, an insurance conglomerate; COUNTRY CASUALTY INSURANCE COMPANY, an insurance company; COUNTRY PREFERRED INSURANCE COMPANY, an insurance company; COUNTRY INVESTOR LIFE ASSURANCE COMPANY, an insurance company; and COUNTRY LIFE INSURANCE COMPANY, an insurance company, | |
| Defendants. | |

ORDER - 1

1    Before the Court are the following three motions: (1) Defendant Country

2    Mutual Insurance's ("CMIC") Motion to Dismiss and to Strike Plaintiffs' Class

3    Allegations, ECF No. 21; (2) the other appearing Defendants' (the "Country

4    Affiliates")[1] Joint Motion to Dismiss, ECF No. 23; and (3) Plaintiffs' Motion to

5    Certify a Class, ECF No. 25.  For the reasons explained below, the Court dismisses

6    the case for lack of subject matter jurisdiction.

7                                **BACKGROUND**

8    The Complaint asserts claims for unfair or deceptive practices in violation of

9    the Washington Consumer Protection Act (CPA).  ECF No. 1 at 7-10 ¶¶ 4.1-6.4.

10   Plaintiffs named CMIC, the Country Affiliates, and Country Financial as

11   Defendants.  ECF No. 1 at 2-3 ¶¶ 1.5-1.10.

12   All claims stem from Plaintiffs' "Agriplus" farm insurance policy issued by

13   CMIC.  *See* ECF No. 1 at 3 ¶¶ 2.1-2.3; ECF No. 9-1.  Plaintiffs contend that this

14   policy was also issued by Country Financial, *see* ECF No. 1 at 3 ¶ 2.1, 4 ¶ 2.4, 5 ¶¶

15   2.14-2.22.  In brief, Plaintiffs allege that CMIC and Country Financial violated

16   various provisions of the Washington Administrative Code in handling Plaintiffs'

17

18   [1] The Country Affiliates include (1) Country Casualty Insurance Company,

19   (2) Country Preferred Insurance Company, (3) Country Investor Life Assurance

20   Company, and (4) Country Life Insurance Company.  *See* ECF No. 23 at 5.

ORDER - 2

insurance claim for losses sustained in a January 2022 fire. *See id.* at 3-5 ¶¶ 2.3-2.22. Plaintiffs indicated that they intend to bring a class action alleging a violation of the Washington CPA on behalf of "*all individuals throughout Washington State and throughout the United States* who have submitted a claim to [CMIC] or Country Financial which was partially or totally denied." *Id.* at 6-7 ¶¶ 3.1-3.11 (emphasis added). Plaintiffs also bring claims against the Country Affiliates, ostensibly on the basis that they are "wholly owned and controlled by Country Financial and implement[] the same settlement practices as [CMIC]." *See id.* at 3 ¶¶ 1.7-1.10, 7 ¶ 4.1 ("Defendants have violated RCW 19.86.020 . . . ."), 10 ¶ 6.4 ("Defendants should be enjoined to adopt claim settlement practices which comply with the CPA . . . .").

Plaintiffs filed a proof of service for CMIC and waivers of service from the Country Affiliates. ECF Nos. 5, 6. To date, Plaintiffs have not served Country Financial, and Country Financial has not otherwise appeared in this matter. *See* ECF No. 42 at 4-5. The parties dispute whether Country Financial is a legal entity that may be subject to suit; Plaintiffs contend that their failure to serve this entity in the time required by Fed. R. Civ. P. 4(m) should be excused until this dispute is resolved. *See id.*

CMIC moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and to strike the class allegations. ECF No. 21. The Country Affiliates moved to

1   dismiss the Complaint for lack of Article III standing and incorporate the

2   arguments in CMIC's motion.  ECF No. 23.  Shortly thereafter, Plaintiffs moved to

3   certify a class.  ECF No. 25.

4       Although Defendants had not raised the issue, the Court observed that

5   Plaintiffs had not alleged subject matter jurisdiction in the Complaint.  *See* ECF

6   No. 1; ECF No. 38 at 2.  In advance of the motion hearing, the Court directed

7   Plaintiffs to file a brief containing the legal and factual grounds for federal subject

8   matter jurisdiction and ordered Plaintiffs to show cause why Defendant Country

9   Financial had not been served in accordance with Fed. R. Civ. P. 4(m).  ECF

10  No. 38.  Plaintiffs submitted a brief regarding the service issue, *see* ECF No. 39,

11  but did not file any briefing on subject matter jurisdiction before the hearing.

12      At the hearing, Plaintiffs' counsel acknowledged that he had overlooked the

13  Court's order requesting further briefing on subject matter jurisdiction and that the

14  Complaint did not contain a jurisdictional statement.  Plaintiffs' counsel stated that

15  Plaintiffs intended to invoke diversity jurisdiction under the Class Action Fairness

16  Act (CAFA) and conceded that Plaintiffs could not meet the amount-in-

17  controversy requirement for ordinary diversity jurisdiction under 28 U.S.C.

18  § 1332(a).  After the hearing, Plaintiffs' counsel filed a supplemental brief

19  memorializing these arguments and proposing language for an amended complaint

20  to correct the lack of a jurisdictional statement.  ECF No. 42.

ORDER - 4

1

**LEGAL STANDARD**

2    "Federal courts are courts of limited jurisdiction and, as such, cannot

3    exercise jurisdiction without constitutional and statutory authorization." *Kokkonen*

4    *v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "It is the duty of

5    federal courts to assure themselves that their jurisdiction is not being exceeded."

6    *HayDay Farms, Inc. v. FeeDx Holdings, Inc.*, 55 F.4th 1232, 1238 (9th Cir. 2022)

7    (quoting *In re Ryther*, 799 F.2d 1412, 1414 (9th Cir. 1986)) (quotation marks

8    omitted).  Therefore, "a court may raise the question of subject matter jurisdiction,

9    *sua sponte*, at any time during the pendency of the action . . . ." *Nevada v. Bank of*

10   *Am. Corp.*, 672 F.3d 661, 673 (9th Cir. 2012) (quoting *Snell v. Cleveland, Inc.*, 316

11   F.3d 822, 826 (9th Cir. 2002)) (quotation marks omitted).

12

**DISCUSSION**

13    In each complaint, a plaintiff must provide "a short and plain statement of

14   the grounds for the court's jurisdiction, unless the court already has jurisdiction

15   and the claim needs no new jurisdictional support."  Fed. R. Civ. P. 8(a)(2).  The

16   Complaint clearly lacks any statement of the grounds for federal subject matter

17   jurisdiction and, therefore, cannot proceed in its current form.  The remaining

18   question is whether Plaintiffs should be given an opportunity to amend.

19    A court may allow the plaintiff to amend their pleadings to cure

20   jurisdictional deficiencies at any stage of the proceedings.  28 U.S.C. § 1653; *see*

*also NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 612-13 (9th Cir. 2016).  "The intent of the provision is to avoid the needless expenditure of judicial resources where a court can instead 'permit the action to be maintained *if it is at all possible* to determine from the record that jurisdiction does in fact exist.'"  *Newgen*, 840 F.3d at 613 (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 639 (2d Cir. 2005)) (emphasis added).  However, "[a] district court acts within its discretion to deny leave to amend when amendment would be futile, when it would cause undue prejudice to the defendant, or when it is sought in bad faith."  *Ventress v. Japan Airlines*, 603 F.3d 676, 680 (9th Cir. 2010) (quoting *Chappel v. Lab. Corp. of America,* 232 F.3d 719, 725-26 (9th Cir. 2000)).  Futility may be found when it becomes clear the pleadings cannot "be cured by the allegations of other facts."  *Doe v. United* States, 58 F.3d 494, 497 (9th Cir. 1995).

In their post-hearing brief, Plaintiffs confirm that their "sole justification for Federal jurisdiction is 28 USC 1332(d)(2)(A)," i.e., under CAFA.  ECF No. 42 at 2.  The record provides no plausible indication that CAFA jurisdiction exists, *see Newgen*, 840 F.3d at 613, and this and other legal deficiencies in Plaintiffs' claims demonstrate that amendment would be futile.

## A. Statutory Requirements for CAFA Jurisdiction

"CAFA provides district courts with jurisdiction over 'class actions' in which the matter in controversy exceeds $5,000,000 and at least one class member

1   is a citizen of a State different from the defendant." *Home Depot U. S. A., Inc. v.*

2   *Jackson*, 587 U.S. 435, 438 (2019) (citing 28 U.S.C § 1332(d)(2)(A)) (alteration

3   omitted).  In addition, CAFA jurisdiction does not apply if the proposed plaintiff

4   class consists of fewer than 100 members.  28 U.S.C. § 1332(d)(5)(B).  "In CAFA

5   cases, the party asserting federal jurisdiction bears the burden to show the CAFA

6   requirements are satisfied." *Little v. Naturestar N. Am., LLC*, No. 22-CV-232,

7   2023 WL 8284007, at *1 & n.1 (E.D. Cal. Nov. 30, 2023) (citing *Lewis v. Verizon*

8   *Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010); *Petkevicius v. NBTY, Inc.*, No.

9   14-CV-2616, 2017 WL 1113295, at *3 (S.D. Cal. Mar. 24, 2017)).

10       *1. Class Definition*

11        Plaintiffs initially defined the proposed class as follows: "all individuals

12   throughout Washington State and throughout the United States who have

13   submitted a claim to Country Mutual or Country Financial which was partially or

14   totally denied."  ECF No. 1 at 6 ¶ 3.1.  In the instant Motion to Certify, Plaintiffs

15   provide a slightly different definition: "all first party insurance claimants whose

16   claim was partially or totally denied by one of Defendants," with a "geographic

17   scope" of "individuals throughout the United States."  ECF No. 25 at 6.  At times,

18   Plaintiffs suggest that this class would be limited to insureds whose claims were

19   denied by Defendants within the last four years, although this temporal limitation

20   does not appear in Plaintiffs' express class definitions. *See, e.g.*, ECF No. 25 at 6

1    ("every claimant within the past four year[s]"); ECF No. 25-1 at 2 ¶ 8 ("The statute

2    of limitations on Washington CPA claims is 4 years as provided in RCW

3    19.86.120 . . .").

4        The proposed class definition does not limit any other factors, such as what

5    type of insurance policy was at issue or whether the claim was denied for lawful or

6    unlawful reasons.  It is not clear what cause of action could be brought by a class

7    member whose insurance claim was lawfully denied, so the Court imputes

8    Plaintiffs to be limiting the class to those whose insurance claims were unlawfully

9    denied.

10        *2.  Class Members and Aggregate Amount-in-Controversy*

11        Plaintiffs contend that the proposed class action meets the 100-member and

12    $5 million amount-in-controversy requirements based on the following

13    calculations.

14        First, Plaintiffs claim that Defendants "Country Mutual and Country

15    Financial" have "more than 11,500 active insurance *contracts* in Washington" and

16    "over 180,000 *contracts*" nationwide, citing generally to "the Washington State

17    Insurance Commissioner" and "the National Association of Insurance

18    Commissioners" (NAIC).  ECF No. 1 at 6 ¶ 3.3 (emphases added).  The Court was

19

20

1  unable to find such statistics at either source's website.[2]  In a declaration

2  supporting the Motion to Certify, Plaintiffs' counsel explains that he estimated

3  there were "about 11,000 Washington and 180,000 [U.S.] *customers*" by "dividing

4  the total premiums collected by Country Mutual in Washington and throughout the

5  United State[s] by George Cameron's insurance premium."  ECF No. 25-1 at 2 ¶ 2

6  (emphasis added).  Counsel attaches reports about CMIC's total premiums in 2023,

7  so it seems he sought to calculate the number of CMIC policies in 2023, though he

8  does not say so.  *See* ECF No. 25-1 at 5-7, 9.  He does not specify the dollar

9  amount of Mr. Cameron's premium that he used in this calculation, nor the

10  applicable year.

11      Counsel is assuming that the premium for Mr. Cameron's farm insurance

12  policy is typical of insurance policies of all types[3] issued by CMIC nationwide,

13

14  [2] The Court also notes that neither source's database of insurance companies

15  yielded any results for "Country Financial."  *See Company Search*, Office of the

16  Ins. Comm'r, https://fortress.wa.gov/oic/consumertoolkit/Search.aspx (last visited

17  Oct. 23, 2024); *Consumer Insurance Search*, Nat'l Assoc. of Ins. Comm'rs,

18  https://content.naic.org/cis_consumer_information.htm (last visited Oct. 23, 2024).

19  [3] Counsel has also provided a NAIC 2023 "Company Overview" report for CMIC.

20  ECF No. 25-1 at 9.  This report indicates that CMIC's largest line of business, by

ORDER - 9

1  regardless of variations between policies in property values, types of coverage,

2  policy limits, etc.  Counsel also does not explain how this estimated number of

3  insurance *contracts* is indicative of the number of CMIC insurance *customers*.

4       Plaintiffs then aver that claims are made on 6 to 7 percent of insurance

5  contracts per year, with an average claim value of $15,000, citing generally to "the

6  Insurance Information Institute" ("II Institute").  *Id.* at 6 ¶ 3.4.  In counsel's

7  declaration, he specifies that "in 2020 about 6.5% of homeowners submitted an

8  insurance claim."  ECF No. 25-1 at 2 ¶ 4.  He attaches a copy of a report on

9  homeowners and renters insurance statistics from the II Institute, though some

10  content was inadvertently cropped out.  ECF No. 25-1 at 11-12.  This report is

11  published on the II Institute's website; the full report indicates that homeowners'

12  insurance claim rates for 2021 and 2022 were lower, at 5.39% and 5.45%,

13  respectively, with an average claim rate of 5.79% for the period between 2018 and

14

_____

15  far, was in "Homeowners multiple peril" insurance, but its next largest lines of

16  business included "Farmowners multiple peril," "Other private passenger auto

17  liability," "Private passenger auto physical damage, and "Commercial multiple

18  peril (non-liability portion)."  *See id.*, also available at

19  https://content.naic.org/cis_refined_results.htm?TABLEAU=CIS_FINANCIAL&C

20  OCODE=20990&:refresh (last visited Oct. 23, 2024).

ORDER - 10

2022.  *See Facts + Statistics: Homeowners and Renters Insurance*, Ins. Info. Inst.,

https://www.iii.org/fact-statistic/facts-statistics-homeowners-and-renters-insurance

(last visited Oct. 23, 2024).  This sheds little light on the claim rates for other types

of insurance or the claim rates on CMIC insurance policies in particular.  The

report does note that the average "[c]laim severity" ranged from $14,090 to

$18,311 between 2018 and 2022, *id.*, which appears to be the figure from which

Plaintiffs conclude that the average claim value is $15,000.  However, to be clear,

this figure represents the "[a]verage amount *paid* per claim."  *Id.* (emphasis added).

It does not provide any information about the average amount per claim that the

insurer should have paid but did not.

Plaintiffs contend that the above calculations "amount[] to about 3000

claims over the time period for about $45,000,000 in Washington and about 47,000

claims for about $700,000,000 throughout the United States."  ECF No. 1 at 6

¶ 3.5.  Assuming, for the sake of argument that (1) Plaintiffs have correctly

estimated that CMIC had 11,500 insurance contracts in Washington and 180,000

insurance contracts nationwide in 2023, after dividing CMIC's total premiums by

Mr. Cameron's premium; (2) all of these contracts were for homeowners

insurance, despite evidence to the contrary, *see* ECF No. 25-1 at 9; and (3) all of

these contracts had claim rates and claim values consistent with the II Institute's

statistics for homeowners insurance policies in the 2018 to 2022 period, then one

might estimate that CMIC customers made an average of 637 claims in Washington (11,000 policies multiplied by a 5.79% claim rate), and 10,422 claims nationwide (180,000 policies multiplied by a 5.79% claim rate), in a given year. One might then estimate that around CMIC paid out nearly $10 million on the Washington claims (637 claims multiplied by a $15,000 average amount paid per claim) and nearly $157 million on nationwide claims (10,422 claims multiplied by a $15,000 average amount paid per claim). Finally, assuming that the year-to-year claim rates and values were roughly consistent from 2020 to 2024, one might multiply these yearly figures by four to conclude that CMIC received 2,548 claims and paid out about $40 million in Washington, and received 41,688 claims and paid out about $628 million nationwide, in the proposed class period from 2020 to 2024. This appears to be the basis for Plaintiffs' contentions that CMIC received 3,000 claims and paid out about $45 million in Washington, and received 47,000 claims and paid out about $700 million nationwide. *See* ECF No. 1 at 6 ¶ 3.5; ECF No. 42 at 3 ¶ x.8. But these figures are the product of numerous layers of speculation and dubious assumptions. More importantly, they say nothing about the number or value of claims CMIC denied, let alone denied unlawfully.

Plaintiffs allege that "[i]f only about 3% of claims were wrongfully denied this amounts to 100 persons throughout Washington and 1,410 throughout the

1  United States." ECF No. 1 at 6 ¶ 3.6. Plaintiffs do not explain where this 3%

2  figure comes from.

3      The proposed amendments do not provide any further information about the

4  number of likely class members and the aggregate amount-in-controversy. At

5  most, the proposed amendments note that "[t]he upper range on potential actual

6  damages is estimated to be $700,000,000." ECF No. 42 at 3 ¶ x.8. This adds little

7  to the allegations in the original Complaint. *See* ECF No. 1 at 6 ¶ 3.5. On the

8  contrary, the proposed amendment offers this $700 million figure as an estimate of

9  *actual damages*, despite that this $700 million figure merely represents a

10 questionably calculated estimate of the amount CMIC paid out in claims over a

11 four-year period. There is no information or plausible allegation in the record

12 about the amount CMIC may have unlawfully refused to pay out.

13     The Court has reviewed Plaintiffs' data sources and notes one potential

14 method of estimating the number of potential class members who have had their

15 claims unlawfully denied by CMIC. The Washington Insurance Commissioner

16 publishes statistics on complaints received against insurance companies in 2022

17 and 2023. *See Company Complaint History*, Office of the Ins. Comm'r,

18 https://fortress.wa.gov/oic/consumertoolkit/Company/CompanyComplaintHistory.

19 aspx?WAOIC=KYICd5A1t638Px1ajY35WA%253D%253D (last visited Oct. 23,

20 2024). According to these statistics, CMIC received a total of 11 complaints in

2023.  *Id.*  Five of these complaints had an "[o]utcome (disposition)" of "Company Position Substantiated"; only one resulted in a disposition of "Company Position Overturned."[4]  *Id.*  In 2022, CMIC also received 11 complaints total, of which three received dispositions of "Company Position Substantiated," and one received a disposition of "Company Position Overturned."  *Id.*  To summarize, only six complaints against CMIC in 2023 and eight in 2022, or seven per year on average, were not conclusively resolved in CMIC's favor.[5]  Only one complaint per year

_____

[4] The Insurance Commissioner's website defines these dispositions as follows: "Company position overturned" indicates that "the Office of the Insurance Commissioner found the [company] to be in violation [of applicable state laws/requirements] or otherwise at fault," and "Company position substantiated" indicates that the company "upheld its original position and appears to be in compliance with applicable statutes/regulations."  *Company Complaint Outcome Descriptions*, Office of the Ins. Comm'r, https://www.insurance.wa.gov/company-complaint-outcome-descriptions (last visited Oct. 23, 2024).

[5] The remainder of these complaints did not receive a conclusive determination from the Insurance Commissioner—for example, where the parties reached a compromise or where the dispute involved a question of fact or law outside the Insurance Commissioner's regulatory authority.  *See Company Complaint*

1    was conclusively resolved in the complainant's favor and against CMIC.  This

2    suggests that the number of CMIC insureds subjected to unlawful insurance

3    practices in Washington between 2020 and 2024 is in the ballpark of four to 28

4    individuals.  That does not suffice for CAFA jurisdiction.

5         In summary, Plaintiffs have failed to demonstrate plausible grounds to

6    conclude that the proposed class would meet the class-member and amount-in-

7    controversy requirements for CAFA jurisdiction, even if Plaintiffs were granted

8    leave to amend.

9    **B. Article III Standing for Claims Against Country Affiliates**

10        Plaintiffs have also failed to address how they have Article III standing to

11   bring CPA claims against the Country Affiliates, which requires dismissal of those

12   claims for lack of subject matter jurisdiction.

13        "In a class action, [Article III] standing is satisfied if at least one named

14   plaintiff meets the requirements."  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974,

15   985 (9th Cir. 2007) (en banc) (citation omitted).  Article III standing requires:

16              that (1) the plaintiff suffered an injury in fact, i.e., one that
                is sufficiently "concrete and particularized" and "actual or
17              imminent, not conjectural or hypothetical," (2) the injury
                is "fairly traceable" to the challenged conduct, and (3) the
18              injury is "likely" to be "redressed by a favorable decision."

19

20   _____

     *Outcome Descriptions*, *supra* note 4.

ORDER - 15

1    *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

2    Plaintiffs contend that they may bring suit against the Country Affiliates in

3    federal court, even though the Country Affiliates were not parties to their insurance

4    contract with CMIC, because the CPA "does not require 'the plaintiff to be in a

5    consumer or contractual relationship with the actor[.]'"  ECF No. 32 at 10 (quoting

6    *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 892 (Wash. 2009)).  In *Panag*,

7    the Washington Supreme Court explained that the CPA does not require

8    "establish[ing] any consumer relationship, direct or implied, between the parties,"

9    although recognizing that other states' equivalent laws do require such a consumer

10   relationship.  204 P.3d at 890 & n.4 (citations omitted).

11   However, a plaintiff may have a "perfectly viable" cause of action in state

12   court, yet "may nonetheless be foreclosed from litigating the same cause of action

13   in federal court, if he cannot demonstrate the requisite [Article III] injury."  *Lee v.*

14   *Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001) (citations omitted).  The

15   plaintiff in *Lee* had filed suit for violations of California's Unfair Business

16   Practices Act against two life insurance companies—one parent company and one

17   subsidiary.  *Id.* at 999.  The plaintiff had only purchased life insurance policies

18   from the parent company, not the subsidiary.  *Id.*  He contended that both engaged

19   in marketing practices that violated the California statute and sought to certify a

20   class action.  *Id.*  The district court concluded that, because the plaintiff had not

ORDER - 16

1    purchased an insurance policy from the subsidiary, "he could not demonstrate that

2    he had suffered an actual injury" caused by the subsidiary "and therefore could not

3    establish standing to bring suit in federal court."  *Id.*  The Ninth Circuit agreed,

4    reasoning that the plaintiff "did not suffer any injury due to [the subsidiary's]

5    conduct" where the plaintiff had not bought any insurance policy from the

6    subsidiary.  *Id.* at 1002.

7        Plaintiffs dismiss *Lee* as inapplicable, arguing that the issue of standing had

8    been conceded by the parties at the time the case reached the Ninth Circuit.  ECF

9    No. 32 at 10.  Though the parties had so conceded, the Ninth Circuit conducted its

10   own standing inquiry, reasoning that "[i]t would make little sense" to decide how a

11   lack of standing would impact the case without first confirming that there was, in

12   fact, a lack of standing.  *Lee*, 260 F.3d at 1001.  Plaintiffs provide no other basis by

13   which to distinguish *Lee*.

14       The Court finds *Lee* dispositive here—Plaintiffs have not suffered any

15   Article III injury caused by the Country Affiliates' challenged insurance practices

16   where Plaintiffs have not bought any insurance policy from the Country Affiliates.

17   The fact that Plaintiffs might have a viable CPA claim against the Country

18   Affiliates in state court does not change the Article III analysis for proceedings in

19   federal court.  Nor can a class action against the Country Affiliates proceed in

20

ORDER - 17

federal court where no named plaintiff has standing to bring a claim against the

Country Affiliates.  *See Bates*, 511 F.3d at 985.

**C. Applicability of the Washington CPA to Out-of-State Claims**

In the above analysis, the Court considered Plaintiffs' assertions about the

number of "nationwide" potential class members for the sake of argument.

However, it remains unclear whether any out-of-state class members would have a

claim against Defendants for violation of the Washington CPA without running

afoul of constitutional limits on legislative jurisdiction.

Plaintiffs seek to bring a nationwide class action, not a class action limited to

Washington class members.  *See* ECF No. 1 at 6 ¶¶ 3.3, 3.5-3.7; ECF No. 25 at 6.

According to the NAIC, CMIC is currently licensed to sell at least one type of

insurance in a majority of states, so the proposed class would likely span across 46

states.  *See Results by Licensing*, Nat'l Assoc. of Ins. Comm'rs,

https://content.naic.org/cis_refined_results.htm?TABLEAU=CIS_LICENSING&C

OCODE=20990&:refresh (last visited Oct. 23, 2024).  Plaintiffs have only pleaded

substantive claims based on the Washington CPA.  *See* ECF No. 1 at 7-10 ¶¶ 4.1-

6.4.  In their Motion to Certify, Plaintiffs further confirm that the CPA is the basis

for all class claims and argue that this is permissible because Defendants agreed to

comply with the Washington CPA by becoming licensed insurers in Washington

and because nationwide enforcement of the Washington CPA would comport with

the legislative purpose for enacting the Washington CPA:

> In the present case there are three specific reasons why a national class is justified. First, Defendants have affirmatively agreed to abide by the laws of Washington with respect to insurance statutes and regulations by becoming Washington State licensed insurance companies. These laws are explicitly subject to the CPA. . . . And as has been discussed, the CPA protection extends beyond the boundaries of Washington. ***The laws of the State of Washington allow all out-of-state residents to sue companies subject to the laws of the State of Washington for violations of the CPA whether or not they reside in the State of Washington.***
>
> Second, Defendants compete with other insurance companies within Washington. . . . Allowing all US residents to join in the action will ensure that all insurance companies operate on an even playing field. This is vital to fulfill the legislature's instruction that the CPA should be applied "to protect the public and foster fair and honest competition." RCW 19.86.920. [No third reason is discussed.]

ECF No. 25 at 9-10 (emphasis added); *see also* ECF No. 35 at 19-20.

There are constitutional limitations on how far a state may apply its own

substantive law outside the state's borders, including in a class action. A state

"must have a 'significant contact or significant aggregation of contacts' to the

claims asserted *by each member of the plaintiff class*, contacts 'creating state

interests,' in order to ensure that the choice of [that state's] law is not arbitrary or

unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985) (quoting

*Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981)) (emphasis added).

ORDER - 19

1      Plaintiffs cite *Thornell v. Seattle Service Bureau, Inc.*, 363 P.3d 587, 591

2  (Wash. 2015), in support of their argument that the Washington CPA may be

3  applied to all class claims.  ECF No. 25 at 9-10; *see also* ECF No. 35 at 19-20.  In

4  *Thornell*, the Washington Supreme Court held that "an out-of-state plaintiff may

5  bring a [CPA] claim against a Washington corporate defendant," or "against an

6  out-of-state defendant for the allegedly deceptive acts of its in-state agent."  363

7  P.3d at 592.  This holding is entirely consistent with *Shutts*, as the *Thornell* opinion

8  focuses on CPA claims that have a significant contact with Washington—either by

9  the defendant's incorporation in Washington or through the unlawful acts of the

10  defendant's agent within Washington.  *See id.*

11      Plaintiffs have not contended that any Defendant is a Washington

12  corporation.  *See, e.g.,* ECF No. 42 at 3 ¶ x.4 ("All Defendants, other than Country

13  Financial, are incorporated in Illinois."), 3 ¶ x.6 ("Country Financial is an

14  unincorporated joint venture of the other Defendants whose principal place of

15  business is in Bloomington, Illinois."); ECF No. 25 at 6 ("All [CMIC] claims are

16  handled in a single location in Bloomington Illinois.").  Nor have Plaintiffs

17  contended that any out-of-state class claim involves Defendants' Washington

18  agent.  The proposed class does not require that class claims have any connection

19  with Washington.  Therefore, the proposed class would undoubtedly include many

20  CMIC insureds who lack any significant contact or aggregation of contacts with

Washington and, therefore, who lack a constitutionally permissible CPA claim against CMIC.  *See Shutts*, 472 U.S. at 821-22.

For this reason, Plaintiffs have failed to state a legally cognizable basis in the Complaint or the proposed amendment for the out-of-state class members to bring a Washington CPA claim against Defendants.  This also casts doubt on whether any out-of-state class members and claims can be counted to meet the 100-class member and $5 million amount-in-controversy thresholds for CAFA jurisdiction over Plaintiffs' claims.

## CONCLUSION

The Complaint lacks any jurisdictional statement sufficient under Fed. R. Civ. P. 8(a)(2) and must be dismissed.  Neither Plaintiffs' proposed amendments nor the other materials in the record provide any plausible basis for CAFA jurisdiction, Article III standing to bring claims against the Country Affiliates, or a legally cognizable basis for out-of-state class claims based on the Washington CPA.  Therefore, amendment would be futile.

The Court dismisses all claims in the Complaint for lack of subject matter jurisdiction.  The federal courts are not the proper forum for adjudication of Plaintiffs' claims.

Accordingly, **IT IS HEREBY ORDERED:**

1.    This action is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

2.    All pending motions are **DENIED** as moot.

**IT IS SO ORDERED.**  The District Court Executive is directed to file this order, enter judgment accordingly, provide copies to counsel, and **CLOSE** the file.

DATED October 23, 2024.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 22